**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| FIRST RATE FIELD SERVICES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:25-CV-1316-SPM |
| | ) |
| A2Z FIELD SERVICES, LLC, et al. | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Petition (Doc. 11), as it relates to the claims against Defendant Amie Sparks only,[1] and Defendant Amie Sparks' Motion to Stay (Doc. 46). The motions have been fully briefed. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). Doc. 14. For the following reasons, the motion to stay will be denied, and the motion to dismiss the claims against Sparks will be granted.

### I.    FACTUAL BACKGROUND

In its Petition, originally filed in state court, Plaintiff First Rate Field Services, LLC ("Plaintiff") alleges the following. Plaintiff and Defendant A2Z Field Services, LLC ("A2Z") are mortgage and general real estate field service providers. Pet'n, ¶ 5. Defendant Amie Sparks was the CEO and president of A2Z. *Id.* at ¶ 11. From 2021 through 2024, Plaintiff and Sparks discussed

---

[1] In the motion, Defendants also seek to dismiss the claims against Defendant A2Z Field Services, LLC. However, because the claims against A2Z Field Services, LLC have been automatically stayed pursuant to that defendant's bankruptcy petition, this Memorandum and Order will not address that aspect of the motion to dismiss.

a potential merger or acquisition. *Id*. In January of 2024, Plaintiff's founder (M. Klein) and Plaintiff's CEO (Rulo) met in person with Sparks and discussed the possibility of Plaintiff purchasing the assets of A2Z (the "Purchase"). *Id.* at ¶ 12. They continued to discuss the possibility of the Purchase throughout 2024, and in the summer of 2024, they agreed to move forward with the Purchase. *Id.* at ¶ 13. Thereafter, Rulo traveled to Ohio to meet with Sparks. *Id.* at ¶ 14. At that meeting, Sparks again agreed to the Purchase, she expressed her desire for the process to move "as quickly as possible," and she said she needed to close the deal fast because of the poor financial state of A2Z. *Id.* at ¶ 14. In January of 2025, Rulo and Sparks negotiated several terms of the Purchase, culminating in a January 29, 2025, telephone call where they agreed to the sale price. *Id.* at ¶ 15. Following the call, Rulo sent Sparks an email expressing his excitement that they had a "virtual handshake of the deal" and outlining the agreed-to terms of the Purchase (but not the closing date). *Id.* at ¶ 16; Ex. 1, Doc. 4-1, at 1-2. Sparks responded, "I'm excited as well (though admittedly a little anxious—so many hurdles still to maneuver)! The offer terms below are agreeable, though I do have a question about the revenue cap and the 6-month waiting period?" *Id*. She then asked several questions about the terms of the Purchase. *Id.* Thereafter, the parties asked their attorneys to prepare a draft of an Asset Purchase Agreement (the "APA"). Pet'n, at ¶ 17.

On or about May 23, 2025, the parties participated in a video call that included their attorneys wherein they again discussed and agreed to the terms of an agreement for the Purchase. *Id.* at ¶ 18. The parties discussed in that call their attorneys would memorialize the terms of the Purchase in the APA. *Id.* at ¶ 19. Also during that call, the parties explicitly agreed to proceed "as if the [APA] was in place." *Id.* at ¶ 20. Thereafter, the parties exchanged many of the deliverables discussed on the May 23rd video call. *Id.* at ¶ 21. From May 23, 2025, to June 16, 2025, the parties'

attorneys worked to memorialize the APA terms in writing, and they exchanged drafts of the APA. *Id.* at ¶ 22. Throughout the process of negotiating the terms of the APA, Sparks sought more information from Plaintiff and more favorable terms. *Id.* at ¶ 23. On or about June 13, 2025, Sparks asked Rulo to detail the explicit terms of her employment with Plaintiff. *Id.* at ¶ 24. Sparks and Rulo had a telephone call where Rulo explained those terms. *Id.* In addition, after the June 13, 2025, call, Rulo sent Sparks an email detailing what her new title would be. *Id.* at ¶ 25. The two continued to email each other throughout the day to clarify the details of Sparks' employment with Plaintiff. *Id.* at ¶ 25; Ex. 7, Doc. 4-7. Sparks sent Rulo an email stating that "the best hope for an EOM close is July 30th" and "August 4th would be ideal for the close date." Ex. 7, Doc. 4-7, at p. 5. Rulo sent Sparks an email answering all of her questions about the terms of her employment. Pet'n, at ¶ 26. He also stated, "if we have to close mid-month (although not preferable, that is what we will do)." Ex. 7, Doc. 4-7, at p. 5. Sparks responded, in part, "Sounds good on the title and I'm more comfortable after our continued conversations." *Id.* at p. 6. She ended the email with, "sounds good regarding close date." Pet'n, at ¶ 26. Plaintiff agreed to all of Sparks' terms, including giving her the title of Chief Operating Officer, agreeing to retain A2Z's employees, and providing Sparks with favorable employment terms. *Id.* at ¶ 27.

On or about June 16, 2025, the parties agreed to the final version of the APA. *Id.* at ¶ 28. Plaintiff's counsel sent Defendants' counsel an email that stated, "Please send around execution version; we are ready to proceed." *Id.* at ¶ 29. Defendants' counsel responded with an email stating, "Clean version is attached and ready for execution." *Id.* at ¶ 30. Rulo signed the APA on June 16, 2025. *Id.* at ¶ 31.

On or about June 18, 2025, Sparks called Rulo and said, "I have news that you're not going to like. I can't let [A2Z] go." *Id.* at ¶ 33. Rulo responded that Plaintiff had spent a significant

amount of time and money on the APA and asked Sparks, "What are you going to do? Go out of business?" *Id.* Sparks responded, "I don't think we're going to go out of business—we've seen growth." *Id.* Thereafter, M. Klein called Sparks to discuss the APA, and Sparks told him that she was not going to go through with the closing on June 30, 2025. *Id.* at ¶ 34. M. Klein asked Sparks what he could do to make her feel more comfortable, and he offered to grant Sparks a new, more favorable agreement. *Id.* Sparks declined and made it clear that there was nothing that would convince her. *Id.* On or about June 27, 2025, Defendants' counsel informed Plaintiff's counsel that Sparks "cannot move forward with a sale to [Plaintiff] at this time and will not be signing the Asset Purchase Agreement." *Id.* at ¶ 35. Defendants did not execute closing documents on June 30, 2025. *Id.* at ¶ 36.

Plaintiff now asserts three claims, each against both A2Z and Sparks. In Count I (Breach of APA), Plaintiff alleges that "[p]ursuant to the APA, A2Z agreed to transfer the assets of A2Z" to Plaintiff," that the closing of the transaction was to take place on June 30, 2025; and that the APA included among the closing deliveries Sparks's restrictive covenants and Sparks's at-will employment agreement. *Id.* at ¶¶ 38-40. Plaintiff alleges that Defendants have failed and refused to adhere to the terms of the APA and have breached the terms of the APA by refusing to close the transactions and provide the closing deliverables. *Id.* at ¶ 46. They seek a $25,000 Termination Fee provided for in the APA plus damages and attorneys' fees, with total damages in excess of $1,375,000. *Id.* at ¶ 50.

In Count II (Fraud), Plaintiff alleges that Defendants made the following knowingly false and material representations to Plaintiff: (1) that Defendants intended to sell the assets of A2Z to Plaintiff; (2) that Defendants intended to fulfill the terms of the APA; and (3) that Defendants would close the sale by June 30, 2025. *Id.* at ¶ 52. Plaintiff alleges upon information and belief

4

that each of the above-referenced representations was false, as Defendants never intended to sell A2Z's assets to Plaintiff but instead used the potential sale to generate business and negotiate more favorable terms with the parties' mutual client, Fannie Mae. *Id.* at ¶ 53. Plaintiff also alleges upon information and belief that Sparks used Plaintiff's interest in A2Z to bolster her portfolio in order to gain credibility with Fannie Mae and to increase pricing and volume with Fannie Mae. *Id.* at ¶ 54. Plaintiff further alleges that Sparks used the potential purchase to take over her partners' interest in A2Z. *Id.* at ¶ 55. Plaintiff alleges that the representations were knowingly false at the time Defendants made them; that each of the representations was material and that Plaintiff materially relied on the truth of the representations in foregoing other business opportunities; that Plaintiff lacked the knowledge that these representations were false; that Defendants intentionally provided the information for the guidance of Plaintiff in the offer to purchase A2Z; that Plaintiff relied on the information provided by Defendants and withheld other business opportunities to its detriment; that Plaintiff had a right to rely on the false representations; and that Plaintiff suffered a pecuniary loss due to its reliance on the information provided by Defendants in that it lost a business opportunity that would have provided a significant increase in annual revenue. *Id.* at ¶¶ 56-62. Plaintiff seeks actual and punitive damages in an amount not less than $1,375,000.00.

In Count III (Breach of APA—Specific Performance), Plaintiff alleges that a judgment compelling specific performance by Defendants of their obligations under the APA is necessary to place Plaintiff in the position that it would have been in but for Defendants' unexcused failures to perform under the APA. *Id.* at ¶¶ 65-72.

After the case was removed to this Court, Defendants jointly filed the instant motion to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. After the motion had been fully briefed, A2Z filed a voluntary petition for relief under the United States

5

Bankruptcy Code, thereby triggering an automatic stay of all proceedings against under 11 U.S.C. § 362. *See* Doc. 42. Defendant Sparks then filed a motion to stay, asking the Court to stay this action in its entirety due to A2Z's bankruptcy proceedings. The Court will address the motion to stay, then the motion to dismiss.

## II.    MOTION TO STAY

It is undisputed that the claims against A2Z are currently stayed under the automatic stay put into place by 11 U.SC. § 362(a). "The automatic stay applies to actions against the debtor, 11 U.S.C. § 362(a)(1), and actions 'to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate,' 11 U.S.C. § 362(a)(3)." *In re Panther Mountain Land Dev., LLC*, 686 F.3d 916, 921 (8th Cir. 2012). "The automatic stay does not, in general, apply to actions against third parties." *Id. See also Am. Prairie Const. Co. v. Hoich*, 560 F.3d 780, 789 (8th Cir. 2009) ("It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants.") (quoting *Teachers Ins. and Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986)). This is true even where the third parties seeking the stay "are in a similar legal or factual nexus with the debtor." *In re Panther Mountain*, 686 F.3d at 923 (internal quotation marks omitted).

"The only exception to this rule that any of the circuits recognize seems to relate only to nonbankrupt codefendants in 'unusual circumstances.'" *Id.* at 921 (quoting *Croyden Assoc's v. Alleco, Inc.*, 969 F.2d 675, 677 (8th Cir. 1992)). "The unusual circumstances in which the bankruptcy court can stay cases against non-debtors are rare." *Id.* (quoting *Ritchie Capital Mgmt., L.L.C. v. Jeffries*, 653 F.3d 755, 762 (8th Cir. 2011)). Such circumstances "typically arise where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect

6

be a judgment or finding against the debtor.'" *Ritchie*, 653 F.3d at 762-63 (quoting *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997)). "In other words, the automatic stay will apply to non-debtors only when 'a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate.'" *Ritchie*, 653 F.3d at 763 (quoting *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-88 (2d Cir. 2003)).

There is conflicting authority regarding whether a district court may extend the bankruptcy stay or whether that power belongs exclusively to the bankruptcy court.[2]   However, as the parties agree, this Court has the authority to stay the claims against Sparks pursuant to its own inherent power to stay proceedings. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). *See also Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 816 (8th Cir. 2006) ("A district court has broad discretion to stay proceedings when appropriate to control its docket."). In considering a stay under its own inherent authority, the Court "'must weigh competing interests,' including potential prejudice or hardship to either party, as well as judicial economy." *Gould v. Farmers Ins. Exch.*, 326 F.R.D. 530, 531 (E.D. Mo. 2018) (quoting *Landis*, 299 U.S. at 254-55).

---

[2] *Compare, e.g.*, *Swallow v. Corizon, LLC*, No. 4:18-CV-1045-JMB, 2023 WL 2967785, at *2 (E.D. Mo. Apr. 17, 2023) (rejecting the argument that the power to extend the automatic stay is exclusively within the bankruptcy court, noting that the district court has the inherent power to stay proceedings, and extending a bankruptcy stay to movants based on a finding of unusual circumstances), with *Simmons v. Tehum Care Servs.*, Inc., No. 2:22-CV-4149-NKL, 2023 WL 3022516, at *1-2 (W.D. Mo. Apr. 20, 2023) ("This Court has no authority to extend a bankruptcy stay beyond its statutory scope . . . [B]ecause [the] power [to extend the automatic stay] is sourced from the Bankruptcy Code, it is for the bankruptcy courts to decide whether such an injunction should issue in the first instance."). *See also BitNile, Inc. v. Perrill*, No. 22-CV-2911 (WMW/DLM), 2023 WL 5723818, at *8 (D. Minn. Sept. 5, 2023) ("The Eighth Circuit has not addressed the question of whether a district court may properly expand a bankruptcy stay to non-debtor parties without first involving the bankruptcy court.").

"The party requesting a stay bears the burden of establishing the need for a stay." *Gibson v. Nat'l Ass'n of Realtors*, No. 4:23-CV-00788-SRB, 2024 WL 3455253, at *1 (W.D. Mo. Jan. 17, 2024) (quoting *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 957 (D. Minn. 2018)).

Here, Sparks argues both that there are "unusual circumstances" that warrant extension of the bankruptcy stay and that considerations of judicial efficiency and economy warrant extension of a stay pursuant to the Court's inherent powers. Sparks argues that First Rate's claims against Sparks will have an immediate adverse consequence on A2Z's estate because A2Z is required to indemnify Sparks with respect to these proceedings. She attaches to her motion the Amended and Restated Operating Agreement of A2Z Field Services, which provides:

> Section 8.1 Right to Indemnification. Each Person who was or is made a party or is threatened to be made a party to or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, arbitrative or investigative (hereinafter a "Proceeding"), by reason of the fact that he is or was a Manager or officer of the Company, shall be indemnified by the Company to the fullest extent permitted by the Act, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Company to provide broader indemnification rights than said law permitted the Company to provide prior to such amendment), against judgments, penalties (including excise and similar taxes and punitive damages), fines, settlements and reasonable expenses (including attorneys' fees) actually incurred as such are incurred by such Person in connection with such Proceeding, and indemnification under this Article 8 shall continue as to a Person who has ceased to serve in the capacity which initially entitled such Person to indemnity hereunder. The rights granted pursuant to this Article 8 are contract rights, and no amendment, modification or repeal of this Article 8 shall have the effect of limiting or denying any such rights with respect to actions taken or Proceedings arising prior to any such amendment, modification or repeal. The indemnification provided in this Article 8 could involve indemnification for negligence or under theories of strict liability.

Ex. B, Operating Agreement, Doc. 46-2, at p. 17. Sparks also argues that proceeding on the claims against her now and then repeating the process as to the claims against A2Z after the automatic stay is lifted would be extraordinarily inefficient, would set the stage for duplicative trials on identical claims against closely related defendants, would create a risk of inconsistent judgments,

would lead to redundancies of effort on the part of counsel and the Court, and would increase litigation costs.

Sparks relies principally on *Swallow v. Corizon,* No. 4:18-CV-1045-JMB, 2023 WL 2967785 (E.D. Mo. Apr. 17, 2023). In *Swallow*, the former employees of a bankrupt defendant moved to stay the claims against them during the pendency of the bankruptcy proceedings, arguing that the bankrupt defendant was providing their defense, that the bankrupt defendant would indemnify them in the event of a judgment, that the bankrupt defendant could not provide a defense and indemnification in light of the bankruptcy because of the particulars of its insurance coverage, and that efficiency and judicial economy warranted a stay of the claims against them. *Id.* at *1. The court rejected the argument that only the bankruptcy court has the power to extend a bankruptcy stay and further noted that the court has the inherent power to stay proceedings outside of the bankruptcy process. *Id.* at *2. The court found that "unusual circumstances" warranted extending the bankruptcy stay. *Id.* It reasoned that because there was "no dispute that [the bankrupt defendant] pays for the [movants'] defense and presumably will indemnify them if a jury finds against them. . . a judgment against them will essentially be a judgment against [the bankrupt defendant]" and that "any resulting judgment would have an immediate adverse economic impact on [the] bankruptcy estate." *Id.* It further found that it would be "extremely challenging to try this matter against these Defendants without" the bankrupt co-defendant. *Id.*

Plaintiff opposes the stay. Plaintiff argues that Sparks has not shown "unusual circumstances" because she has not shown that there is "such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant." *See Ritchie*, 653 F.3d at 762. Plaintiff argues that it asserts claims against Sparks that are personal to her, that arise from her own individual misrepresentations and tortious conduct, that do not arise merely from

9

her status as an officer of A2Z, and that can be fully adjudicated without any determination of A2Z's liability. Plaintiff also argues that the indemnification agreement is contingent and speculative and may never ripen, and thus allowing Plaintiff to pursue its claims against Sparks will not have "an immediate adverse economic consequence for the debtor's estate." *See id.* at 763. Plaintiff notes that the contract only provides indemnification "to the fullest extent permitted by the Act" and suggests that indemnification for the fraud claims against Sparks may be precluded by applicable law. Plaintiff also argues that a stay of indefinite duration would prejudice Plaintiff.

The Court finds Plaintiff's arguments persuasive and finds Sparks has not met her burden of demonstrating that a stay is warranted in this case, either based on a finding of "unusual circumstances" or based on the factors relevant to the Court's inherent power to stay. First, Sparks has not shown that "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *See Ritchie*, 653 F.3d at 762. The claims asserted against Sparks appear to be largely distinct from the claims against her bankrupt co-defendant. Plaintiff seeks to hold Sparks liable for her own, individual fraudulent misrepresentations, which may not translate into viable fraud claims against A2Z. On the other hand, as discussed below, the breach of contract claims that may be viable against A2Z fail as to Sparks because Sparks was not a party to the contract at issue. Additionally, unlike in *Swallow*, in which there was "no dispute" that the bankrupt defendant was paying for the codefendants' defense and would presumably indemnify them for any judgment, here it appears to be uncertain whether an indemnification obligation will ever arise with respect to the claims against Sparks. Thus, Sparks has not shown that allowing the claims against her to proceed at this time would have an "immediate" adverse consequence on the bankruptcy estate. Moreover, unlike in *Swallow*, in

10

which the Court found that it would be extremely challenging to try the case against the non-bankrupt defendants without the bankrupt defendant, Sparks has not shown that it would be difficult to try the case against her in the absence of A2Z. She does not, for example, argue that A2Z's documents are unavailable to her or that she cannot mount an adequate defense without A2Z's presence.

The Court also finds that the potential prejudice to Plaintiff of a stay of indefinite duration weighs strongly against a stay here. As Plaintiff argues, the parties have already invested significant time and resources on this litigation over several months. If the Court imposes an indefinite stay, it is possible that witness memories will fade, that documents will become unavailable, and that Plaintiff's ability to obtain meaningful relief will be diminished.

The Court recognizes that there may be some inefficiency and duplication of effort for the Court and counsel in proceeding separately against Sparks and A2Z. However, the Court believes these concerns are minimal in light of the distinct nature of the claims against Sparks and the claims against A2Z. Additionally, the Court finds those concerns are outweighed by the potential prejudice to Plaintiff that would result in an indefinite stay and the lack of a showing of prejudice to Sparks from proceeding at this time.

For the above reasons, Sparks's motion to stay will be denied.

### III.   MOTION TO DISMISS

The Court turns next to Defendants' Motion to Dismiss the claims against Sparks.

#### A.  Legal Standards

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may assert by motion that a pleading "fail[s]to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although "detailed factual allegations" are not required, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept as true all of the factual allegations in the complaint, but it need not accept the legal conclusions. *Iqbal*, 556 U.S. at 678. The Court must make "all reasonable inferences in favor of the nonmoving party." *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019).

"A court ruling on a motion to dismiss under Rule 12(b)(6) may consider material attached to the complaint." *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006) (quotation marks omitted). *See also Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) ("[W]hile ordinarily, only the facts alleged in the complaint are considered in determining whether it states a claim, . . . materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint") (internal citations and alterations omitted). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). The Court will therefore consider the exhibits attached to the Petition in ruling on the motion to dismiss.

### B. Discussion

Sparks argues that Plaintiff's breach of contract and fraud claims should be dismissed for failure to state a claim. The parties agree that these claims are governed by Missouri law.

   *1. Breach of APA Claims (Counts I and III)*

In Count I, Plaintiff seeks damages for Defendants' breach of the APA. In Count III, Plaintiff seeks specific performance as a remedy for breach of the APA. Defendants move to dismiss Counts I and III as to Sparks because she is not a party to the APA and because Missouri law does not impose personal liability on agents of disclosed principals. Plaintiff offers no response to this argument.

The Court agrees with Defendants that Plaintiff has failed to state a claim against Sparks for breach of the APA . "It is a well settled principle of Missouri law that a contract generally binds no one but the parties thereto, and it cannot impose any contractual obligation or liability on one not a party to it." *Yes Chancellor Farms, LLC v. Merkel*, 670 S.W.3d 214, 227 (Mo. Ct. App. 2023). *Accord, e.g., Reddick v. Spring Lake Ests. Homeowner's Ass'n*, 648 S.W.3d 765, 777 (Mo. Ct. App. 2022); *Siebert v. Peoples Bank*, 632 S.W.3d 461, 469 (Mo. App. S.D. 2021). "An agent who contracts in his or her own name for an undisclosed principal is a party to the contract and is personally liable on the contract." *Sheppard v. East*, 192 S.W.3d 518, 524 (Mo. Ct. App. 2006). However, "[a]n agent does not have liability for the breach of contract entered into on behalf of a disclosed principal in the absence of evidence that the agent intended to be personally liable." *1215 Pine, LLC v. Travelers Ins. Co.*, No. 4:05-CV-1532 (CEJ), 2006 WL 587660, at *2 (E.D. Mo. Mar. 10, 2006) (citing *Benson Optical Co., Inc. v. Floerchinger*, 810 S.W.2d 531, 534 (Mo. Ct. App. 1991)). *See also Grobe v. Vantage Credit Union*, 679 F. Supp. 2d 1020, 1028 (E.D. Mo. 2010) ("In Missouri, an agent for a disclosed principal is not liable for the nonperformance of a contract.") (citing *Hardcore Concrete, LLC v. Fortner Ins. Servs., Inc.*, 220 S.W.3d 350, 355 (Mo. Ct. App. 2007)).

Here, both Counts I and III are for breach of the APA, which is attached as an exhibit to the Petition. The APA states that it is "by and among First Rate Field Services, LLC and A2Z Field

Services, LLC." Pl.'s Ex. 4, Doc. 4-4, at p. 1. The APA identifies the "Seller" as A2Z, identifies the "Purchaser" as First Rate, and identifies those two entities collectively as the "Parties." *Id.* at p. 2. The signature page does not include Sparks among the parties to the APA. *Id.* at p. 35. Consistent with the language of the APA, Plaintiff's allegations indicate that Sparks was negotiating the APA on behalf of A2Z, not on behalf of herself personally or on behalf of some undisclosed principal. There are no allegations to indicate that Sparks intended to be *personally* liable under the APA. Plaintiff's allegations that "Defendants," collectively, breached the APA are insufficient to state a breach of contract claim against an agent of a disclosed principal. *See Smith v. Ideal Image Dev. Corp.*, No. 4:20-CV-00761 SRC, 2020 WL 6504425, at \*3-\*4 (E.D. Mo. Nov. 5, 2020) (holding that a plaintiff failed to state a breach of contract claim against an agent of a corporation where the plaintiff failed to plead facts supporting an inference that the agent ever intended to be personally liable under the contract entered into by the corporation; finding allegations of contractual obligations and breaches on the part of "Defendants," collectively, were not sufficient).

For all of the above reasons, and in the absence of any contrary argument from Plaintiff, the Court will grant Sparks's motion to dismiss Counts I and III. The Court also finds that the dismissal of these claims should be with prejudice. Plaintiff has not sought leave to amend, nor has it suggested in any way how it might have a viable breach of contract claim against Sparks. Indeed, Plaintiff did not even respond to Defendant's argument that the breach of contract claims against Sparks failed because she was not a party to the APA. Additionally, in its response to the motion to stay the claims against Sparks, it ignored the breach of contract claims completely, instead discussing only the allegations of Sparks's misrepresentations and tortious conduct. *See* Doc. 48, at p. 8. Under these circumstances, dismissal with prejudice is appropriate. *See Pet*

*Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009) (holding the district court did not abuse its discretion in dismissing a claim with prejudice and without leave to amend "where the plaintiff has not indicated how it would make the complaint viable, either by submitting a proposed amendment or indicating somewhere in its court filings what an amended complaint would have contained"); *Futo v. U.S. Bancorp*, No. 25-CV-1464 (ECT/DJF), 2026 WL 252424, at *12 (D. Minn. Jan. 30, 2026) (dismissing claim with prejudice where it was "difficult to hypothesize how amendment might change" the outcome and where the plaintiffs did not describe any additional facts they might add to support their claim).

### 2. Fraud Claim (Count II)

The Court next considers Sparks's Motion to Dismiss Count II (Fraud). Under Missouri law, a fraud claim based on misrepresentations requires a plaintiff to show the following:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Stevens v. Markirk Constr., Inc.*, 454 S.W.3d 875, 880 (Mo. 2015) (quoting *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131-32 (Mo. 2010)). "A plaintiff's failure to establish any one of the essential elements of fraud is fatal to recovery." *Renaissance Leasing*, 322 S.W.3d at 132.

Under Rule 9(b) of the Federal Rules of Civil Procedure, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under this standard, "a plaintiff must plead 'such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908,

917 (8th Cir. 2007) (quoting *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001)). "In other words, the party must typically identify the 'who, what, where, when, and how of the alleged fraud." *Id.* (quoting *United States ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003)). "This requirement is designed to enable defendants to respond 'specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct.'" *Id.* (quoting *Abels*, 259 F.3d at 920). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Id.* (quoting *Com. Prop. Invs. Inc. v. Quality Inns Int'l Inc.*, 61 F.3d 639, 644 (1995)).

Sparks argues that Plaintiff's fraud claim fails for four independent reasons: (1) the alleged misrepresentations concern only future intentions, which are not actionable (2) the allegations of falsity are made only "upon information and belief" and without factual support, (3) Plaintiff does not allege with particularity how it relied on any alleged misrepresentation or how such reliance proximately caused it harm, and (4) Plaintiff's fraud claim is duplicative of Plaintiff's contract claims.[3]

In Count II, Plaintiff alleges that Defendants made the following knowingly false and material representations to Plaintiff: (1) that Defendants intended to sell the assets of A2Z to Plaintiff; (2) that Defendants intended to fulfill the terms of the APA; and (3) that Defendants would close the sale by June 30, 2025. These allegations, standing alone, do not satisfy Rule 9(b)'s

---

[3] In their Reply, Defendants also argue that Plaintiff cannot establish "reasonable reliance" because the exhibits attached to the Petition show that Plaintiff was aware of Defendants' hesitation and uncertainty regarding the sale. The Court will not consider this argument, which was raised for the first time in Defendant's reply brief. *See Green v. Missouri*, 734 F. Supp. 2d 814, 848 (E.D. Mo. 2010) ("As a general rule, courts will not consider arguments raised for the first time in a reply.") (citing *Barham v. Reliance Standard Life Ins. Co.*, 441 F.3d 581, 584 (8th Cir. 2006)). Additionally, Defendants do support this argument with any Missouri case law addressing the question of what constitutes "reasonable reliance."

16

particularity requirement because they do not identify who made the statements, what specifically was said, or when the statements were made. However, the Court's review of the other allegations in Petition reveals the following. The first alleged misrepresentation—that Defendants intended to sell the assets of A2Z—was made by Sparks at an in-person meeting in Ohio sometime between the summer of 2024 and January of 2025, when Sparks first agreed to the Purchase, expressed her desire for the process to move "as quickly as possible," and told Plaintiff's representative that she needed to close the deal fast because of the poor financial state of A2Z.[4] The second and third alleged representations—that Defendants intended to fulfill the terms of the APA and would close the sale by June 30, 2025—were first made on June 16, 2025, when Plaintiff alleges that "the Parties agreed to the final version of the APA" and Defendants' counsel, Whitney Wilson, sent Plaintiff a final version of the APA to sign.[5] Although Plaintiff's Petition does not specifically state that *Sparks* made these representations, the Court finds the allegation that "the Parties agreed to the final version of the APA," combined with the facts alleged showing that Sparks was the person acting on behalf of A2Z during negotiations, is sufficient to allege that Sparks made these representations on June 16th.

Sparks first argues that the alleged misrepresentations are not actionable because they are statements of future intent.[6] However, under Missouri law, "a statement of intent as to future

---

[4] Sparks also affirmed this representation through her subsequent statements, made through June 16, 2025.

[5] Prior to this date, at least through June 13th, the parties were still negotiating the terms of the APA. For example, in their June 13th emails, both Sparks and Rulo were discussing possible closing dates in July and August.

[6] Sparks relies for this argument on *Wolf v. St. Louis Public Service Co.*, 357 S.W.2d 950, 956 (Mo. Ct. App. 1962), in which the court stated, "Fraud cannot be predicated upon a mere promise even though accompanied by a present intention not to perform it on the ground that even under such circumstances the promise is not a misrepresentation of an existing fact." Although this statement, read in isolation, appears to support Sparks's position, the court in *Wolf* acknowledged

17

performance or events" can form the basis of a fraud claim if the plaintiff can "establish that at the time the statement was made the speaker did not intend to perform the act represented." *Stevens v. Markirk Constr., Inc.*, 454 S.W.3d 875, 881 (Mo. 2015). "This is because a state of mind, or intent, is itself an existing fact, the misrepresentation of which can constitute fraud." *Id.* (internal quotation marks omitted). *See also, e.g.*, *Healing Chair, Inc. v. Logan Logan & Watson*, No. 4:22-CV-327-SRW, 2023 WL 183829, at *9-11 (E.D. Mo. Jan. 13, 2023) (applying Missouri law) (holding the plaintiff adequately alleged fraud where it alleged that the defendants represented that they would conduct a thorough review of the plaintiff's governing documents but made that representation knowing they had no intention of conducting such a review); *Sanders v. Gould*, 685 S.W.3d 589, 597 (Mo. Ct. App. 2024) (affirming judgment on jury verdict where there was evidence to show that although the defendant repeatedly promised the plaintiff that she would sign a house over to the plaintiff if the plaintiff made certain payments, the defendant never actually intended to do so; finding there was "substantial evidence from which the jury could conclude that the representation was false at the time it was made"); *CADCO, Inc. v. Fleetwood Enters., Inc.*,

---

later in the opinion that "[a] state of mind, an existing purpose, may be represented and thus constitute a misrepresentation of fact." *Id.* It also discussed exceptions to the general rule and suggested that it was possible that a statement of intent to perform a future action, if false when made, might fall within one of those exceptions. *Id.* at 957. Regardless, to the extent that *Wolf* is inconsistent with subsequent authority from the Missouri Supreme Court, this Court is obligated to follow the rule as articulated by the Missouri Supreme Court.

The second case relied on by Sparks for this proposition is distinguishable because its statement about representations regarding future actions was specifically concerned with representations regarding the future actions of a third party outside the speaker's control. *See Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) ("A party is not justified in relying on a speaker's representation, however, if the representation concerns a future action of a third party that is outside of the speaker's control."). The allegations in the Petition indicate that A2Z was within Sparks's control.

18

220 S.W.3d 426, 438 (Mo. Ct. App. 2007) (holding fraud claim was properly submitted to the jury where the plaintiff asserted that the defendant fraudulently misrepresented its intent to award the plaintiff an exclusive sales territory; finding that the plaintiff "presented sufficient evidence from which the jury reasonably could have found that [the defendant] never intended to grant [the plaintiff] an exclusive product territory . . . at the time [the defendant] represented that [the plaintiff] would have such a territory"). Here, as in these cases, if Plaintiff has alleged that the statements of intent were false at the time they were made, the fact that they concern future performance is not fatal to the fraud claim.

Sparks next argues that Plaintiff's fraud claim fails because Plaintiff alleges only "upon information and belief" that Defendants' representations were false at the time they were made. As Sparks points out, "[a]llegations pleaded on information and belief usually do not meet Rule 9(b)'s particularity requirement." *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 421 (8th Cir. 2020) (quoting *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009)). However, "[w]here the facts constituting the fraud are peculiarly within the opposing party's knowledge, the allegations may be pleaded upon information and belief if accompanied by a statement of facts on which the belief is founded." *United States ex rel. Strubbe v. Crawford Cnty. Mem'l Hosp.*, 915 F.3d 1158, 1163 (8th Cir. 2019) (internal quotation marks omitted).

The Court finds that Plaintiff has failed to plead with particularity that the representations were false when they were made. Plaintiff's allegations of falsity are made upon information and belief, and Plaintiff does not allege the facts on which that belief was founded. Plaintiff alleges that Sparks wanted to use the potential sale to generate business and negotiate more favorable terms with the parties' mutual client (Fannie Mae), to bolster her portfolio in order to gain credibility with Fannie Mae, to increase pricing and volume with Fannie Mae, and to take over her

19

partners' interest in A2Z. But these facts suggest, at most, a possible *motive* for Sparks to represent to various parties that she planned to sell A2Z to Plaintiff. It is not at all clear how these facts support the conclusion that Sparks was lying when she made these representations. Plaintiff does not, for example, allege that at the same time Sparks was telling Plaintiff she planned to sell, she was telling others that she did not intend to sell or was acting in a manner inconsistent with an intent to sell. Thus, Plaintiff has failed to plead falsity with particularity as required by Rule 9(b). *See Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 590-91 (8th Cir. 2018) (holding plaintiff failed to allege fraud claim with particularity where the plaintiff alleged "on information and belief" that the defendant intentionally provided false promises but did "not set forth any supporting facts showing that [the defendant] intended to defraud  him when the promises were made"); *Ambassador Press*, 949 F.3d at 422-23 (holding plaintiff ailed to allege fraud claim with particularity where the plaintiff alleged "on information and belief" that the defendant knew when it made its representations that a printer had significant speed and print head problems because the "complaint does not set forth any supporting facts showing that [the defendant] intended to defraud [the plaintiff] *when the promises were made*").

Sparks next argues that Plaintiff does not allege with particularity how it relied on any alleged misrepresentation or how such reliance proximately caused it harm. "Parties alleging fraud must plead reliance with 'sufficient particularity to state a plausible claim of justifiable reliance.'" *Ambassador Press*, 949 F.3d at 423 (quoting *OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*, 851 F.3d 800, 805 (8th Cir. 2017)). "Conclusory allegations that a plaintiff detrimentally relied on defendants' representations are not sufficient factual matter to state a claim of relief plausible on its face." *Id.* (citing *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 673 (8th Cir. 2012)). *See also Allison v. Sec. Ben. Life Ins. Co.*, 980 F.2d 1213, 1215-16 (8th Cir.

20

1992) (fraud allegations were inadequate under Rule 9(b) because they "fail[ed] to state with particularity . . . how [the defendant] intended plaintiffs to act in reliance on each of the alleged misrepresentations, the nature of plaintiffs' justifiable reliance on each misrepresentation, and the damage resulting from such reliance"); *Blood v. Givaudan Flavors Corp.*, 606 F. Supp. 2d 972, 987 (N.D. Iowa 2009) ("The detrimental reliance element of a fraud claim must be pleaded with particularity under Rule 9(b)."); *ACI Worldwide Corp. v. MasterCard Techs., LLC*, No. 8:14CV31, 2014 WL 7409750, at *6-7 (D. Neb. Dec. 31, 2014) (noting that "[p]arties who allege fraud must plead detrimental reliance with particularity" and dismissing a fraud claim that "failed to plead facts connecting [the defendants'] misrepresentations, [the plaintiff's] reliance, and [the plaintiff's] damages").

The Court finds that Plaintiff's conclusory allegations regarding reliance and injury fall short of this standard. Plaintiff alleges that "each of [Defendants'] representations were material and Plaintiff materially relied on the truth of the representations in forgoing other business opportunities," that Plaintiff "relied on the information provided by defendants and withheld other business opportunities to its detriment," and that it "suffered a pecuniary loss due to its reliance on the information provided by Defendants in that it lost a business opportunity that would have provided a significant increase in annual revenue." Pet'n, at ¶¶ 57,62. But Plaintiff does not plead any facts plausibly connecting the alleged misrepresentations, the alleged reliance, and the alleged damages. Plaintiff does not allege *what* business opportunities it forewent or withheld, *when* Plaintiff decided to forego those business opportunities relative to the dates of the alleged misrepresentations(s), or *how* Sparks's misrepresentations caused Plaintiff to forego the business opportunities. The lack of factual allegations related to which representations Plaintiff relied on, and when it relied on them, is especially significant because of the timing of the representations in

21

this case: two of the three representations on which Plaintiff alleges it relied (that Defendants intended to fulfill the terms APA and close by June 30th) appear to have been made only two days before Sparks informed Plaintiff that she would *not* be doing those things. Thus, any actions taken in reliance on those two representations would presumably need to have occurred during that two-day period. Nothing in Plaintiff's Petition plausibly suggests that it did anything during that two-day period.

In *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, the court found similarly vague allegations regarding reliance insufficient for purposes of Rule 9(b). In that case, the plaintiff alleged that the defendant made several fraudulent representations regarding the performance and reliability of its products, and it alleged that it would not have purchased the products but for the fraudulent misrepresentations. No. 17-CV-4557 (JNE/SER), 2018 WL 3975117, at *2-*4 (D. Minn. Aug. 20, 2018), *aff'd*, 949 F.3d 417 (8th Cir. 2020). The court granted the defendant's motion to dismiss, finding that the plaintiff had not alleged detrimental reliance with sufficient particularity. *Id.* It stated:

> [The plaintiff] does not specify how it relied on each of the three alleged misrepresentations, or even on the misrepresentations in general. Did it turn down competing printer proposals from other companies because of the assurances that [the defendant] provided? Were there specific discussions among Ambassador's decision-makers that show a shift toward purchasing [the defendant]'s product after these assurances were made? Under the heightened requirements of Rule 9(b) and as that Rule is applied in *Allison [v. Security Ben. Life Ins. Co.*, 980 F.2d 1213, 1216 (8th Cir. 1992)]*, [the plaintiff] must do more than just allege that there were misrepresentations and that it relied on them; it must provide plausible factual allegations showing *how* it relied on them to its detriment.

*Id.* at *4. Here, as in *Ambassador*, Plaintiff alleges that there were misrepresentations and that it relied on them, but it does not provide plausible factual allegations showing *how* it relied on them to its detriment.

22

The Court also agrees with Sparks that Plaintiff has not sufficiently alleged that it suffered an injury that was proximately caused by its reliance on the alleged misrepresentations. In *Stumm v. BAC Home Loans Servicing, LP,* 914 F. Supp. 2d 1009 (D. Minn. 2012), the plaintiff homeowners brought a fraud claim based on the defendant's representation to them that the sheriff's sale of their home would be postponed. *Id.* at 1013. They alleged they relied on the misrepresentation by not exploring alternatives to foreclosure or diverting money into saving their home. *Id.* at 1014. The court held that this was insufficient to plead detrimental reliance with particularity. It stated:

> This might suffice to allege *reliance,* but it does not suffice to allege *detrimental* reliance. The Stumms allege that, because of the assertion of the BAC representative, they did not "explor[e] alternatives to foreclosure." *Id.* But the Stumms do not plead—much less plead with specificity—that any of these "alternatives" were actually available to them. Obviously, the Stumms could not have been *harmed* by their failure to explore alternatives to foreclosure unless one of those alternatives would have *worked.* Similarly, the Stumms allege that they did not "divert money into saving their home." *Id.* Again, though, the Stumms do not plead—much less plead with specificity—that they actually had funds available to "divert" into bringing their mortgage current.

*Id.* at 1014-15. Here, as in *Stumm*, Plaintiff vaguely alleges "lost business opportunities," but it does not allege any facts that would permit the Court to infer that any particular business opportunities were actually available to them or that Plaintiff would have obtained the benefit of those opportunities had Plaintiff not relied on the alleged misrepresentation(s).

For the above reasons, the Court finds Plaintiff has failed to plead a fraud claim against Sparks with particularity under Rule 9(b), and the Court will therefore dismiss the fraud claim against Sparks.[7] Because the claim is being dismissed for failure to plead with particularity and it

---

[7] Sparks also argues that Plaintiff's fraud claim is based on promises in the APA and is duplicative of Plaintiff's breach of contract claim. The parties provide very little case law and argument addressing this issue, and they do not address whether this argument applies to fraud claims against a party such as Sparks, who is not a party to the contract. Regardless, the Court finds that it need

23

appears possible that Plaintiff may be able to plead additional facts to bring the fraud claim into compliance with Rule 9(b), the Court finds a dismissal without prejudice is appropriate. The Court will give Plaintiff the opportunity to file an amended complaint if it wishes to do so; if it does not, the Court will enter judgment dismissing the claim.

## IV.  CONCLUSION

For all of the above reasons,

**IT IS HEREBY ORDERED** that Defendant Amie Sparks' Motion to Stay (Doc. 46) is **DENIED,** without prejudice to refiling if Plaintiff continues to pursue this matter against Defendant Sparks and either party discovers new information that favors staying proceedings against Defendant Sparks.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Plaintiff's Petition (Doc. 11), as it relates to the claims against Defendant Amie Sparks only, is **GRANTED**. Counts I and III are **DISMISSED** with prejudice, and Count II is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff may file an amended complaint addressing the deficiencies addressed in this order by no later than **Thursday, July 16, 2026**.  If Plaintiff files an amended complaint, Plaintiff may reassert claims that it previously asserted against A2Z and Sparks in the initial complaint; however, because this action is stayed as to A2Z, Plaintiff may not assert new claims against A2Z in the amended complaint.[8] If no amended complaint is filed by July 16, 2026, this Court will enter a judgment dismissing the complaint in the manner and for the reasons described in this Memorandum and Order.

---

not reach this underdeveloped issue because the fraud claim against Sparks must be dismissed for other reasons.

[8] As noted in this Order, claims against Defendant A2Z are subject to an automatic bankruptcy stay. As such, if Plaintiff files an amended complaint pursuant to this Order, assuming the stay has not been lifted, Defendant A2Z will not be expected to respond to the amended complaint.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of July, 2026.